Opinion filed March 17,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00147-CR

                                                    __________

 

                    KAILY
RENE WITTANEN ROSALES, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                  On
Appeal from the 142nd District Court

                                                          Midland
County, Texas

                                                   Trial
Court Cause No. CR34879

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The
jury convicted Kaily Rene Wittanen Rosales of the offense of manslaughter, made
an affirmative deadly weapon finding, and assessed punishment at confinement
for six years.  We affirm.  

            Appellant
presents two issues on appeal.  Both are related to the sufficiency of the
evidence that she was driving recklessly.  In her first issue, appellant
contends that the evidence was legally and factually insufficient to support
her conviction.  In the second, appellant contends that her due process rights
were violated because her conviction was based upon a “lack of evidence” that
she was driving recklessly.  

We note at the outset of our analysis that the Texas Court
of Criminal Appeals has now held in Brooks v. State, 323 S.W.3d
893 (Tex. Crim. App. 2010), that there is “no
meaningful distinction between the Jackson v. Virginia[1]
legal-sufficiency standard and the Clewis[2] factual-sufficiency standard”; that the Jackson v.
Virginia standard is the “only standard that a reviewing court should apply
in determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable doubt”;
and that “[a]ll other cases to the contrary, including Clewis, are
overruled.”  Brooks, 323 S.W.3d at 895, 902, 912 (footnotes added).  Accordingly,
a challenge to the factual sufficiency of the evidence is no longer viable.  We
also note that appellant did not have the benefit of the opinion in Brooks when
this case was briefed.  We will review appellant’s factual sufficiency challenge
under the legal sufficiency standard set forth in Jackson v. Virginia.  Under
this standard, we must review all of the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443
U.S. 307; Brooks, 323 S.W.3d at 899.  

            Appellant
was charged with and convicted of manslaughter for recklessly causing the death
of Patricia Hochman:

[W]hile driving and
operating [a] motor vehicle on a public road by driving at an excessive rate of
speed, and by failing to keep a proper lookout, and by changing lanes in an
unsafe manner, and by causing the vehicle operated by [appellant] to travel
into an opposing lane of travel, and by a combination thereof, and hitting and
striking and colliding with a motor vehicle occupied by Patricia Hochman. 

 

She argues that
the evidence is insufficient to show that she was driving recklessly because it
showed that she was not speeding, changing lanes unsafely, or failing to keep a
proper lookout but that she was merely avoiding an accident with another
vehicle that was driving unsafely.  We disagree with appellant.  

The
uncontroverted evidence shows that, around 4:20 p.m. on June 23, 2008, appellant
was driving a red Ford Explorer southbound on Loop 250 when she lost control,
went through the median, became airborne, and crashed into Hochman’s northbound
car.  The front-end of the Explorer landed on the hood of Hochman’s car, just
below the windshield on the driver’s side. The impact left gouge marks in the
pavement from the frame of Hochman’s car.  Hochman was pronounced dead at the
scene.

Four
eyewitnesses to the collision testified at trial.  Appellant’s friend and
passenger, Mysti Hudson, testified that appellant came to her house before noon,
that they smoked some marihuana and hung out for a while, and that they left
the house around 1:15 or 1:30 p.m. to go eat lunch.  After they ate and went
shopping, appellant had to go pick up her husband and children on the other
side of Midland.  When she pulled out of the parking lot, appellant
“accidentally cut somebody [in a white car] off.”  Hudson testified that
appellant was in a hurry and was not driving like she normally did but that she
did not think appellant was speeding. Appellant had been switching lanes to
pass people when she came upon a green pickup that was driving slowly.  She put
on her signal, slowed down, and moved into the left lane to pass the pickup.  However,
the pickup also moved into the left lane to let appellant pass, so appellant
then moved back into the right lane – but so did the pickup.  Appellant moved
to the left to avoid hitting the pickup and lost control of her vehicle.

Phyllis
Palmer testified that she was driving her orange Jeep southbound on the loop
when she noticed that a red SUV was suddenly “right on” her.  The SUV was
“traveling so fast” that she thought it was going to rear-end another car, but
instead the SUV went between Palmer’s Jeep and the other car even though there
was “no room” to do so.  Palmer had to veer off the road and into the median to
avoid the SUV.  Palmer managed to maintain control of her vehicle and continued
watching the SUV.  The SUV continued weaving in and out of traffic, passing
everybody.  Palmer testified that the driver of the SUV needed to slow down and
that the SUV was traveling at a “way greater” speed than Palmer, who was going
slightly below the speed limit.  As the SUV was weaving in and out of a cluster
of cars ahead of Palmer, it fishtailed and the driver lost control.  Palmer saw
the SUV cross the median, flip, and “crush[] that car.”  Palmer testified that
the driver of the SUV was driving in a manner that was “erratic” and “uncalled
for” and that she was not merely avoiding other cars.

Brandon
Spruill also witnessed the wreck.  He was driving southbound on the loop when a
speeding red Explorer passed him.  He watched as it continued to pass other
vehicles.  He saw the SUV swerve over into the left lane and cut somebody off. 
The driver of the SUV passed some other vehicles and then lost control and
“shot straight over into the median.”  The SUV was “sideways” through the
median, “flip[ped] up” at the edge of the median, and then hit a car “dead on.” 
Spruill described appellant’s driving in one word:  “Reckless.”

Logan
Nunez was also driving on the loop when he observed a young lady in a “[r]eddish”
Explorer driving erratically.  She was switching from “lane to lane” “in and
out of cars.”  Nunez saw the SUV run an orange Jeep off the road as the SUV
weaved in and out of traffic.  Nunez said that the driver of the SUV “jerked it
. . . very hard to the left” and lost control of her vehicle.  The SUV made a
sharp left into the median, went airborne, and “nosedived” into the right front
side of an oncoming vehicle, near the front windshield and the driver’s mirror.

A
registered nurse who stopped to render aid testified that the driver of the SUV
was screaming and crying hysterically.  The driver stated, “I’ve taken all
those pills.  He told me not to.  Now I’ve killed somebody.”  The nurse thought
that the driver appeared as though she were under the influence of drugs.

Sergeant
Craig Matthews of the Midland Police Department was dispatched to the scene and
then went to the hospital where appellant and Hudson had been taken.  He
identified appellant in court.  Appellant told him that she was the driver of
the red Ford Explorer involved in the wreck, though she had no driver’s license
or insurance.  She also told him that she had smoked marihuana and taken a
prescription medication earlier in the day.

Sergeant
Matthews attempted to reconstruct the accident to determine appellant’s speed
at the time she began skidding.  One test method revealed a speed of only 47
miles per hour. Sergeant Matthews did not believe that was accurate and
concluded that the equipment used to determine the friction coefficient was not
working properly.  A second test method using equipment from the airport to
determine the friction coefficient revealed a speed of 61 miles per hour.  The
speed limit on the loop was 60 miles per hour. 

After
reviewing all of the evidence, we hold that the evidence is sufficient to
support the jury’s finding that appellant was driving in a reckless manner when
she caused the death of Hochman and that appellant’s due process rights were,
therefore, not violated by a lack of evidence.  Appellant’s first and second
issues are overruled.  

The
judgment of the trial court is affirmed.  

 

 

                                                                                    JIM
R. WRIGHT

                                                                                    CHIEF
JUSTICE

March 17, 2011

Do not publish. 
See Tex. R. App. P.
47.2(b). 

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]Jackson v. Virginia, 443 U.S. 307 (1979).

 





[2]Clewis v. State,
922 S.W.2d 126 (Tex. Crim. App. 1996).